## MARK GRAVES v. J. H. BRAMLEY.

Western Section. June 20, 1925.

No petition for Certiorari was filed.

1. **Mortgages. Before a deed absolute on its face can be shown to be a mortgage it must be shown that the parties intended the deed to be a mortgage.**
   In an action to have a deed absolute on its face construed as a mortgage, held that it must be shown that the party taking the deed knew or was bound by the use of ordinary diligence to know, that in taking the deed he was taking a mortgage to secure the money paid.

2. **Mortgages. Evidence. Parol evidence must be clear, cogent and convincing to convert a deed absolute on its face into a mortgage.**
   Parol evidence to convert a deed absolute on its face into a mortgage must be clear, cogent and convincing. If this requirement can be made stronger, it is made so by the lapse of time.

3. **Mortgages. Evidence. Evidence held insufficient to convert a deed absolute on its face into a mortgage.**
   In an action to have a deed absolute on its face construed as a mortgage where the land had passed through several parties and all of them except the original grantee who was the complainant in the suit were dead, held that the evidence of the complainant was not sufficient unsupported by other testimony and in view of the considerations paid at the time of the various transactions to warrant the court in construing the deed as a mortgage.

Appeal from Chancery Court, Carroll County; Hon. Thos. C. Rye, Chancellor.

Affirmed.

Maddox & Maddox and McCall & Browning, of Huntingdon, for appellant.

John T. Peeler and J. W. Murphy, of Huntingdon, for appellee.

HEISKELL, J. In this case there is a motion on behalf of the defendant to dismiss the appeal of complainant and to strike the record from the file. We think upon the record as presented complainant is entitled to have the case determined on the merits, therefore the said motion is overruled.

This is a suit in which complainant seeks to have certain deeds declared mortgages and decreed to be satisfied.

Complainant Mark Graves filed his bill against J. H. Bramley as defendant in the chancery court for Carroll county, on February 15, 1921.

It was alleged in the bill that the complainant was the owner of two tracts of land, one containing 90 acres and one containing 125 acres, that he had owned the 90 acres since 1865, and the 125 acre tract since 1870, that he had never surrendered the possession and was now living on same, and had been in the undisputed possession since the date of his deeds, and was now in the possession of said land.

That on the 8th day of January, 1896, he conveyed to his son, John Graves, in trust the 90 acres for borrowed money in the sum of $200 and executed a deed of trust to John Graves to secure said amount, but that said deed on its face purported to convey the title and that said deed of trust was recorded on the 8th day of January, 1896, that the same is changed and mutilated, it appears to have been written first, for one dollar, and afterwards the word "five" written over the one, and "hundred" in the margin of the record before the word "dollar."

That when he executed said deed to John Graves that it was the agreement and understanding and contract between him and John Graves that said conveyance was to be only a mortgage or deed of trust and for the purpose of securing the payment of said $200. That at the time said land was worth $1000 or $1200.

And that on the 17th day of August, 1899, he conveyed to John Graves the 125 acre tract in trust to secure his son in the sum of $100, and that said instrument was recorded. That this deed was a mortgage, but on its face showed to be a warranty deed, said tract of land was worth $600 at that time.

That on the 15th day of November, 1905, John Graves conveyed his two tracts of land in trust to J. F. Leach for $300, which deed was recorded in the register's office for Carroll county, and it was the understanding between John Graves and J. F. Leach that the said John Graves was simply transferring his mortgage or deed of trust to J. F. Leach as security for said $300, and that said mortgage or

trust was to be held against said land and against the said Mark Graves for the security of the $300.

That on the 5th day of January, 1911, the said Leach, conveyed the two tracts of land to the defendant, J. H. Bramley in trust for the recited sum of $588.87, which deed is recorded in the register's office for Carroll county, and that said conveyance was a purported deed.

That at the time Leach transferred to Bramley that it was the agreement, contract and understanding that said instrument was a mortgage with the privilege of the complainant to pay off said indebtedness just as complainant was paying Leach.

That before John Graves conveyed to Leach and before Leach conveyed to Bramley the complainant had purchased two mules on a credit from Leach, which went into the said indebtedness of $588.87, and that the remainder of said indebtedness was the $300, the original amount complainant obtained from John Graves, and interest added. That complainant never executed any mortgage to Leach for said mules, but when Leach transferred to Bramley he embraced the value of said mules.

That at the time Leach transferred said land to Bramley it was worth $3000, and at the time John Graves transferred said land to Leach it was worth $2500.

That complainant had long since paid Bramley more than said mortgage debt against said land and interest thereon, and that Bramley had received more than $1000 on said mortgage, and that complainant didn't owe the defendant Bramley anything by reason of said borrowed money, or by reason of said transfer, that Bramley had no right or claim against said land and no title thereto.

And on the 9th day of February, 1921, Bramley had issued a writ of unlawful detainer against complainant and had cited him to trial before a Justice of the Peace on the 16th day of February, 1921, for the purpose of dispossessing him of said land.

That the defendant had an unfair advantage of the complainant in a court of law that his conveyance was both legal and equitable that he had a right to file a bill in the chancery court and have all matters in controversy adjudicated in that court.

That he claimed possession of these two tracts of land that said conveyance was only a mortgage and had been paid and the lien discharged, and that complainant set up the statute of limitations of three years, seven years, ten years and twenty years against the defendant, and that the lien contained in said deeds of trust was barred by the statute of ten years and twenty years, and he had a right to have said conveyance from John Graves to Leach and from Leach to Bramley removed and set aside.

And he prayed and obtained a writ of injunction enjoining the defendant from prosecuting the unlawful detainer suit and prayed that

said deeds be decreed mortgages, and be set aside, and that they be declared satisfied and paid in full, and for general relief.

The defendant Bramley filed an answer and set up that said deeds from the complainant to John Graves and from John Graves to J. F. Leach and from J. F. Leach to the defendant were all warranty deeds, and that he was innocent purchaser of said land, and that complainant was estopped from setting up any verbal agreement between the complainant and his son, John Graves, and denied that his deed from Leach was a deed of trust or mortgage or intended to be, and set up that he had been exercising acts of possession and control as the owner of said land since the date of said deeds, and renting it out and had rented a portion of the land to the complainant and collected rents from him. And denied that the land was worth $3000, and set up that the amount he paid for it was an adequate and fair amount he paid for the land. It is denied that complainant had ever paid him any amount except as rent, and set up that the complainant was still indebted to him for rents on said land and for other moneys he let him have.

He admitted that he obtained a writ for unlawful detainer of said land as the complainant still owed him rent for said land, and set up that he had all the time since his purchase controlled said land as his own.

He then filed his answer as a cross-bill against the original complainant Mark Graves and alleged that he was the owner of said two tracts of land, and that the cross-defendant had been a tenant on said land of cross-complainant and that cross-defendant was now undertaking to set up adverse possession of ownership of said land, and that cross-defendant was wholly insolvent, and he prayed that the court decree that cross-complainant was the absolute owner of said land and for general relief.

The defendant Mark Graves filed his answer to the cross-bill in which he repeats in substance many of the allegations of the original bill. He admits that the defendant may have exercised acts of ownership over said land, but denies that he had a right to do so. Says that while cross-complainant may have made a pretense of renting said land out still the rent has been received as payment upon the secured debt. Denies that cross-complainant has paid the taxes on this land during all of this time, and says the taxes have been paid by him.

The original defendant J. H. Bramley died after the original pleadings were made up, and the original bill was revived against his sons Dorsey Bramley and Adrian Bramley, and the cross-bill was revived in their name as cross-complainants.

On a final hearing of the cause the court decreed that the complainant, Mark Graves, was not entitled to the relief he sought in this bill and dismissed his original bill, and decreed that cross-complainant

Dorsey Bramley and Adrian Bramley as the only children and heirs at law of J. H. Bramley, deceased, are entitled to recover the possession of said land as the owners thereof, from the cross-defendant Mark Graves, and that they recover possession of same and if necessary a writ of possession issue, to put cross-complainant in possession of said two tracts of land, and adjudged the cost against the original complainant and the cross-defendant.

The complainant has appealed and assigned errors as follows:

"First: The court erred in decreeing that the complainant was not entitled to the relief he sought and in dismissing his bill and taxing him with the cost of the cause.

"Second: The court erred in decreeing that the defendants were entitled to the possession of the land."

Complainant, who is the appellant, admits that he must not only prove that the deeds from complainants to his son John Graves were mortgages and the deed from John Graves to J. T. Leach was a mortgage, but that J. H. Bramley knew or was bound by the use of ordinary diligence to know that in taking the deed from Leach he was taking a mortgage to secure the money he paid to Leach.

There is no question as to complainants right to relief if these contentions are supported by proof clear, cogent and convincing which at least means proof clear and strong enough to convince the court. The brief for complainant contains the quotation from Pomeroy in which we concur.

"While each case must involve its own special facts, the following circumstances are regarded by the courts as important and as throwing much light upon the real intent and nature of the transaction: the existence of a collateral agreement by the grantor to pay money; his liability to pay interest; where a debt existed antecedent to the conveyance; the price of the conveyance being inadequate; the grantor still left in possession; an application or negotiation for a loan preceding or pending the transaction."

It is contended for complainant that all these indicia of a mortgage exist in the present case. We do not think so. The proof tends to show no agreement to pay interest. The proof of an antecedent debt is of the most vague and weak character. The same may be said of the inadequacy of the consideration. It is true the grantor has remained in possession, but the weight of the testimony shows that he has paid rent to the grantee and that the grantee and not the grantor has paid the taxes. The evidence of application or negotiation for a loan at any time is very weak. On the other hand we find in addition to complainant paying rent and not paying taxes, that Bramley exercised acts of control over the land indicating ownership. There is not a line in writing to prove the existence of a debt. The first grantee, the son of complainant, proceeded to execute a deed of trust on the land thereby treating the land as his own. This son, John

Graves is not produced as a witness. It is true complainant says he thinks John is dead, but his absence is not satisfactorily accounted for. About two years before complainant testified John was living in Nashville, came to Huntingdon and saw one of the attorneys of complainant. There is nothing in the record as to this conference, except that complainant says his attorney told him he was not ready to take John's deposition. If John can be located by complainant, the failure to present him as a witness is fatal to complainant's case. If John is dead, we are confronted by this situation. When the proof is taken the three grantees are all dead—John Graves, J. T. Leach and J. H. Bramley. All that we have in the record from any one of these three is the sworn answer and cross-bill of defendant Bramley denying all the allegations of the bill. The oath of defendant to his answer was waived in the original bill, so this sworn answer can be considered only as a pleading. Bramley died before complainant testified in the case. To say the least of it, however, the situation by reason of the long delay and absence of all the grantees calls for strong proof on the part of the complainant.

It is not necessary to cite authorities to the effect that parol evidence to convert a deed absolute on its face into a mortgage must be clear, cogent and convincing. If this requirement can be made stronger it is made so by lapse of time. Loyd v. Currin, 3 Hum., 462.

"It is open to question whether in any case, after the decease of the grantee the unaided testimony of the grantor alone, however intelligible and credible he may be as a witness, should be held sufficient to set aside and invalidate the title claimed under it." (The muniment of title.) Moore v. Crawford, 130 U. S., 134.

The testimony of complainant taken by itself does not measure up to the requirement as to the character of parol proof necessary to change a deed into a mortgage. He did not execute a note for the money he says he borrowed from his son John Graves and no note was executed by any one of the grantors afterwards as evidence of the debt claimed to be secured by mortgage on this land. As to just what the contract was between complainant and his son at the time he deeded the land to John complainant gives this account:

"Q. What was the agreement or contract between you and John at the time you got the money? A. The land was security for the money. Q. What was to be done when you paid him the money back that you had borrowed? A. Mr. Leach paid it off for me. Q. Was that Mr. J. F. Leach? A. Yes. Q. 69. How long a time did you get the money from John? A. To—Q.—69—There wasn't no time set. Q. What was to be done with the transfer you made to him when you paid him his money? A. Well, he transferred it to Mr. Leach and Mr. Leach paid him his money. Q. At the time you got the money from John and secured him with the land what was he to do with the land, if anything,

when you paid him his money back? A. He wasn't to do anything. 72Q. If you conveyed the land to him to secure the loan what was to become of the mortgage when you paid him his money back? A. I just don't know. Q. Was he to hold the deed or mortgage after you paid him his money? . .. . A. No, sir. Q. Did you agree to pay him any interest on this money? A: No, sir.''

He says further John loaned him only $300, but the deed from him to John of record, after a change being made by someone shows a recited consideration of $600 for the whole land. Mark Graves at one time was indicted for lewdness and convicted, and he married a woman reputed to be the mother of mulatto children. This necessarily goes to his credibility.

Complainant insists that the discrepancy between the real value and the consideration of these deeds is strong evidence to show the land was not sold but mortgaged. Complainant paid for the 125 acre tract $275, January 21, 1870, and for the 90 acre tract $500, February 20, 1869. That is $775 for the whole. The court will take judicial cognizance of the fact that land was high in 1869 and 1870.

Complainant says John Graves loaned him only $300. The deed to the 90 acres as presented in the record, dated January 8, 1896, (Tr. pp. 33, 34) shows a consideration of $500. The deed to the 125 acres dated August 17, 1899 (Tr. pp. 31, 32) shows a consideration of $100, or $600 for the whole. The deed from John Graves to J. T. Leach recites a consideration of only $300. This was November 15, 1905. John Graves on August 17, 1899, the same day complainant made the last deed to him, executed a deed of trust on the whole 215 acres to secure A. L. Fumbanks $110. It does not appear that this deed of trust had been satisfied in 1905. If not it might have entered into the consideration. Besides, if there was not gross lack of consideration in this conveyance from the complainant to the first grantee the presumption does not apply. The recited consideration in the deed to Bramley January 5, 1911, was $588.87, and at this time it rented for $40 a year. It advanced in value from that time on and in 1916, 1917 or 1918 Bramley offered to sell it for $975. All this notwithstanding the much higher estimates of witnesses for complainant does not afford complainant much evidence to convert deeds into mortgages.

In Loyd v. Currin, 3 Hum., 465, the proof was stronger than in this case to make out a mortgage, and the delay to sue was about ten years. The court held the proof insufficient, and said: ''after such a lapse of time the testimony must be exceedingly clear and satisfactory before the court would be justified in setting up a parol defeasance to defeat an absolute conveyance against the direct denial of the answer.''

The court is of the opinion that the proof of complainant is not sufficient to sustain his bill and that defendants are entitled to relief on the cross-bill. Therefore the decree of the Chancellor is affirmed. The costs of the appeal are adjudged against complainant.

Owen and Senter, JJ., concur.